IN THE NEBRASKA COURT OF APPEALS

MEMORANDUM OPINION AND JUDGMENT ON APPEAL
(Memorandum Web Opinion)

STATE V. LINWOOD

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

MICHAEL J. LINWOOD, APPELLANT.

Filed January 5, 2021.    No. A-20-384.

Appeal from the District Court for Lancaster County: JODI L. NELSON, Judge. Affirmed.

Joe Nigro, Lancaster County Public Defender, and Amy J. Peters for appellant.

Douglas J. Peterson, Attorney General, and Melissa R. Vincent for appellee.

MOORE, Chief Judge, and BISHOP and WELCH, Judges.

MOORE, Chief Judge.

I. INTRODUCTION

Michael J. Linwood appeals from his plea-based conviction in the district court for Lancaster County of attempted possession of marijuana with intent to deliver. On appeal, Linwood claims that he received ineffective assistance of trial counsel and that his sentence was excessive. We affirm.

II. BACKGROUND

On September 5, 2019, the State filed an information in the district court, charging Linwood with possession of marijuana with intent to deliver, a Class IIA felony; possession of THC with intent to deliver, a Class IIA felony; and possession of a controlled substance (MDMA), a Class IV felony. In exchange for Linwood's plea of guilty, the State filed an amended information in which the marijuana charge was amended to attempted possession of marijuana with intent to

- 1 -

deliver, a Class IIIA felony, and the remaining counts were dismissed. Linwood also agreed to assign his bond to the Nebraska Department of Revenue as part of the plea agreement.

At the plea hearing, the district court explained to Linwood his right to service of the amended information and a 24-hour waiting period before entering any plea. Linwood informed the court that he wished to waive those rights, that no one had made any threats against him to get him to do so, and that he was waiving those rights freely and voluntarily. After the court accepted Linwood's waiver of service of the amended information and the 24-hour waiting period, the State arraigned Linwood on the amended information. Linwood expressed his understanding of the charge and the possible penalties and informed the court that he wished to plead guilty.

Before accepting Linwood's plea, the district court advised Linwood of the constitutional rights that he was giving up by entering a plea, and Linwood indicated that he understood the rights that he was waiving. The court then reviewed with Linwood the possible sentences, the fact that the court was not required to grant probation and that there were many sentencing factors the court could consider; he again indicated that he understood. Linwood affirmed that he had discussed his rights with his attorney and denied needing any more time to talk with her about his rights. He also informed the court that he was freely and voluntarily waiving the rights explained by the court. Linwood's attorney affirmed that she had discussed those rights with Linwood, believed that he understood them and the consequences of waiving them, and believed that his waiver was made freely, voluntarily, knowingly, and intelligently. The court then accepted Linwood's waiver, after finding beyond a reasonable doubt that Linwood understood his rights; waived them freely, voluntarily, knowingly, and intelligently; and understood the consequences of doing so.

The district court inquired further about Linwood's interactions and satisfaction with his trial counsel. Linwood affirmed that his attorney had explained the charges set forth in the amended information, that he understood the charges, that he had told his attorney everything he knew about the case, and that he was not aware of anything else that could be helpful that he had not discussed with her. Linwood also agreed that he was satisfied with the job his attorney had done for him and that he believed she was competent and knew what she was doing. Linwood denied that his attorney had failed, refused, or neglected to do anything he had asked of her. He informed the court that he had had enough time to talk with his attorney about the case and denied needing any additional time to talk with her about anything before the hearing proceeded further.

The State recited the parties' plea agreement (as stated above), and both Linwood and his attorney affirmed that this reflected their understanding of the agreement. Linwood also affirmed his understanding that the district court was not bound by any plea negotiations having to do with sentencing and that the court could still consider circumstances relating to the dismissed charges in sentencing him. The court asked Linwood whether anyone had made any promise to him or represented to him in any way what his actual sentence would be if the court accepted his guilty plea, and Linwood answered "no." Linwood denied that anyone, including law enforcement, had made any threat, used any force, or held out any inducement or promise other than the expressed plea agreement to get him to plead. Linwood affirmed that his attorney had discussed with him what the State would need to prove in order to convict him and that he had committed the crime at issue. When asked by the court for a description of what happened on May 13, 2019, Linwood

stated that he had been traveling with a friend on their way to Illinois with "the . . . marijuana," and they were pulled over in Nebraska.

According to the factual basis provided by the State, on May 13, 2019, a trooper with the Nebraska State Patrol stopped a vehicle traveling east on Interstate 80 in Lancaster County for a traffic violation. He identified the back seat passenger as Linwood. The trooper ran the identifications of the driver and Linwood and found that they were both Colorado residents. While in contact with them at the stopped vehicle, the trooper detected the odor of marijuana emitting from the vehicle. The trooper had the driver return with him to the patrol vehicle, spoke with the driver about the traffic violation, indicated that he smelled marijuana, and asked how much marijuana was in the stopped vehicle. The driver indicated that he and Linwood were on their way from Denver to Chicago to pick up the driver's daughter and that there were "probably several ounces of marijuana in the vehicle." Upon searching the stopped vehicle, the trooper found two tablets in the center console area that later tested positive for "methamphetamine [sic]," multiple bags of marijuana under the front passenger seat, 1.6 ounces of suspected "THC wax or oil" in a baggie under the front passenger seat, and "marijuana residue all over the vehicle in various locations." After the driver and Linwood were arrested for possession of marijuana with intent to deliver, the vehicle was towed and more thoroughly searched. In addition to the marijuana residue in the vehicle and the items under the front passenger seat, troopers found 3.06 pounds of marijuana, receipts for marijuana dispensary locations in the names of several different individuals, including Linwood, and a receipt indicating that Linwood had been in Illinois on May 6. The prosecutor stated that he "suspect[ed]" if the trooper were called to testify, he would testify that the amount of marijuana and "the circumstances" were consistent with distribution of marijuana, rather than personal use. The suspected marijuana located in the vehicle had not been submitted for laboratory testing, but the parties stipulated at the plea hearing that it was in fact "marijuana, a Schedule I controlled substance."

Linwood informed the district court that he had no disagreement with what the prosecutor believed the evidence would show if the case went to trial and that he still wished to enter a guilty plea. His attorney affirmed that the plea was consistent with the law and the facts; that she believed Linwood was making his plea freely, voluntarily, knowingly, and intelligently; and that she was not aware of any reason the court should not accept his plea. The court found beyond a reasonable doubt that (1) Linwood understood his rights and freely and voluntarily waived them; (2) Linwood understood the nature of the charge against him and the consequences of his plea; (3) his plea was made freely, voluntarily, knowingly, and intelligently; (4) there was a sufficient factual basis for the plea. The court accepted Linwood's guilty plea and found him guilty of the charge in the amended information.

Following the preparation of a presentence investigation report (PSR), the district court sentenced Linwood to 365 days' imprisonment on the attempted possession of marijuana with intent to deliver charge, followed by 9 months' postrelease supervision. He was given credit for 19 days already served. Linwood filed this timely appeal.

## III. ASSIGNMENTS OF ERROR

Linwood assigns that he received ineffective assistance of counsel because his trial counsel (1) failed to adequately communicate with him through the duration of the case, (2) failed to adequately investigate and challenge the admissibility of evidence at trial, and (3) unduly pressured him to enter a plea against his wishes and made promises to him regarding sentencing. Linwood further assigns that the cumulative effect of all the errors amounted to a violation of his right to effective assistance of trial counsel. Finally, Linwood assigns that the district court abused its discretion by imposing an excessive sentence.

## IV. STANDARD OF REVIEW

Whether a claim of ineffective assistance of trial counsel can be determined on direct appeal presents a question of law, which turns upon the sufficiency of the record to address the claim without an evidentiary hearing or whether the claim rests solely on the interpretation of a statute or constitutional requirement. *State v. Collins*, 307 Neb. 581, 950 N.W.2d 89 (2020). An appellate court determines as a matter of law whether the record conclusively shows that (1) a defense counsel's performance was deficient or (2) a defendant was or was not prejudiced by a defense counsel's alleged deficient performance. *Id.*

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Stack*, 307 Neb. 773, 950 N.W.2d 611 (2020). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *State v. Senteney*, 307 Neb. 702, 950 N.W.2d 585 (2020).

## V. ANALYSIS

### 1. INEFFECTIVE ASSISTANCE OF COUNSEL

Linwood argues that he received ineffective assistance of trial counsel in several respects. He is represented on direct appeal by different counsel than trial counsel. When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record. *State v. Devers*, 306 Neb. 429, 945 N.W.2d 470 (2020). Once issues of trial counsel's ineffective performance are properly raised, the appellate court will determine whether the record on appeal is sufficient to review the merits of the ineffective performance claims. *Id.*

When a claim of ineffective assistance of trial counsel is raised in a direct appeal, the appellant is not required to allege prejudice; however, an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel. *Id.* General allegations that trial counsel performed deficiently or that trial counsel was ineffective are insufficient to raise an ineffective assistance claim on direct appeal. *State v. Weathers*, 304 Neb. 402, 935 N.W.2d 185 (2019). In order to know whether the record is insufficient to address assertions on direct appeal that trial counsel was ineffective, appellate counsel must assign and argue deficiency with enough particularity (1) for an appellate court to make a determination of

whether the claim can be decided upon the trial record and (2) for a district court later reviewing a petition for postconviction relief to be able to recognize whether the claim was brought before the appellate court. *State v. Devers, supra*. An ineffective assistance of counsel claim made on direct appeal can be found to be without merit if the record establishes that trial counsel's performance was not deficient or that the appellant could not establish prejudice. *State v. Weathers, supra*.

To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Iddings*, 304 Neb. 759, 936 N.W.2d 747 (2020). In a plea context, deficiency depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases. *State v. Blaha*, 303 Neb. 415, 929 N.W.2d 494 (2019). The prejudice requirement in a plea context is satisfied if the defendant shows a reasonable probability that but for the errors of counsel, the defendant would have insisted on going to trial rather than pleading guilty. *State v. Haynes*, 299 Neb. 249, 908 N.W.2d 40 (2018), *disapproved on other grounds, State v. Allen*, 301 Neb. 560, 919 N.W.2d 500 (2018). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *State v. Collins*, 307 Neb. 581, 950 N.W.2d 89 (2020). In determining the prejudice component of alleged ineffective assistance of counsel in a plea context, the likelihood of the defense's success had the defendant gone to trial should be considered along with other factors, such as the likely penalties the defendant would have faced if convicted at trial, the relative benefit of the plea bargain, and the strength of the State's case. *State v. Haynes, supra*.

Linwood observes that this court may find the record insufficient to determine his claims of ineffective assistance of counsel and if so, requests that his claim be preserved for an evidentiary hearing. However, we find the record is sufficient to review the merits of Linwood's claims to the extent they are pled with sufficient particularity.

### (a) Failure to Communicate

Linwood claims that his trial counsel was ineffective in failing to adequately communicate with him through the duration of the case, which he argues hindered his ability to make informed decisions about the case. Specifically, he argues that his trial counsel failed to communicate effectively regarding the evidence that would be used against him at trial, the elements that would need to be proven for each offense, the possible defenses that could be raised at trial, the nature of his plea, and the possible sentences for the offense of which he was convicted.

The State argues that this assigned error has not been pled with sufficient particularity. See *State v. Mrza*, 302 Neb. 931, 926 N.W.2d 79 (2019) (assignments of error on direct appeal regarding ineffective assistance of trial counsel must specifically allege deficient performance, and appellate court will not scour remainder of brief in search of such specificity). Regardless of whether this claim was sufficiently pled, the record refutes Linwood's assertions. Linwood was informed of the nature of the charge and possible penalties both during the arraignment portion of the hearing and by the district court later during the course of the plea hearing. He represented to the court his understanding of this information, expressed his satisfaction with the communications

from his attorney, and affirmed his understanding of and his agreement with the factual basis provided by the State. See *State v. Vanderpool*, 286 Neb. 111, 835 N.W.2d 52 (2013) (allegations of ineffective assistance which are affirmatively refuted by defendant's assurances to sentencing court do not constitute basis for postconviction relief). This assigned error fails.

### (b) Failure to Investigate and Challenge Evidence

Next, Linwood claims his trial counsel was ineffective for failing to adequately investigate and challenge the admissibility of evidence at trial. Linwood argues that if his attorney had conducted a more thorough investigation of the circumstances of the traffic stop and challenged the admissibility of evidence, Linwood would have felt less pressured to enter a plea. Beyond suggesting that the vehicle was targeted due to having Colorado license plates and arguing that the due to lack of "compelling testing" of the suspected marijuana he "felt pressured" to stipulate to the nature of the substance and to enter a plea, he does not state what investigation into these areas would have shown or how it would have changed the outcome. Brief for appellant at 18, 19. As discussed further below, the record refutes Linwood's assertions about being pressured to enter into a plea. We conclude that Linwood has failed to make sufficiently specific allegations of deficient conduct in regard to this claim.

### (c) Pressure to Enter Plea and Sentencing Promise

Linwood asserts that he received ineffective assistance because his trial counsel unduly pressured him to enter a plea against his wishes and made promises to him regarding sentencing. Linwood asserts that trial counsel promised that he would receive a lenient sentence if he pled guilty to the amended charge. He also claims that trial counsel failed to inform him that by entering a plea, he would be waiving certain rights, including the right to challenge the stop and subsequent search of the vehicle. Linwood argues that he felt "overbearing pressure" to enter a plea, that he would spend more time in jail if he went to trial, and that he pled without full knowledge of "the potential ramifications on his ability to seek future relief." Brief for appellant at 19.

The record clearly refutes this claim. At the plea hearing, the court advised Linwood that there were many factors the court could consider in determining the appropriate sentence and that the court was not bound by any plea negotiations or recommendations, whether by the State or Linwood's counsel, with respect to the sentence imposed. Linwood affirmed that no promises had been made to him with respect to what his actual sentence would be and that no one had promised anything to get him to plead guilty. The court fully explained the rights Linwood would be waiving by entering his plea, including the right to challenge the seizure of any evidence from him, and Linwood expressed his understanding of those rights and the consequences of waiving them. Linwood has failed to show deficient performance in this regard. See *State v. Vanderpool, supra*.

### (d) Cumulative Error

Linwood assigns that even if one of the above examples of trial counsel's performance did not, by itself, rise to the level of a constitutional violation, the cumulative effect of all the errors shows trial counsel's overall performance was so deficient that it denied him the effective

assistance of counsel. Because we have found that Linwood failed to show deficient performance in any of the ways alleged, there was no cumulative error.

## 2. EXCESSIVE SENTENCE

Linwood was sentenced to a term of 365 days' imprisonment on the attempted possession of marijuana with intent to deliver charge, a Class IIIA felony. Neb. Rev. Stat. §§ 28-201(4)(c) and 28-416(1)(a) and (2)(b) (Cum. Supp. 2018). Absent circumstances not relevant here, Class IIIA felonies are punishable by up to 3 years' imprisonment and 18 months' postrelease supervision, a $10,000 fine, or both fine and imprisonment; and require a minimum of 9 months' postrelease supervision if imprisonment is imposed. See Neb. Rev. Stat. § 28-105 (Cum. Supp. 2018). Linwood's sentence was within the statutory limits.

Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether a sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed. *State v. Stack*, 307 Neb. 773, 950 N.W.2d 611 (2020). In determining a sentence to be imposed, relevant factors customarily considered and applied are the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *Id.* However, the sentencing court is not limited to any mathematically applied set of factors. *State v. Gray*, 307 Neb. 418, 949 N.W.2d 320 (2020). The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *State v. Stack, supra*.

Linwood argues that the district court abused its discretion in failing to adequately consider his ability and willingness to cooperate with a term of probation, his obligations to his family and dependents, his minimal criminal history, his education and employment experience, his medical concerns and need for substance use treatment, and his willingness to accept responsibility and enter a plea. He argues that with proper consideration, these factors support a significant reduction in his sentence of incarceration.

According to the PSR, Linwood, age 33 at the time of his interview with probation, has a GED. He was working as a delivery driver for various companies at the time of his incarceration and had been doing so since 2018. He was in a relationship and his partner was expecting a child. He has two older children, one who lived with him and one for whom he has been paying, but is behind on, child support. His prior criminal history consisted of a few traffic offenses and charges for possession of small amounts of marijuana and drug paraphernalia for which he received jail time and/or "[s]supervision" and public service. Linwood admitted to having had a substance abuse problem with marijuana in the past and that he was currently in need of an evaluation for substance abuse issues. He also informed the probation officer that he had "experienced kidney failure 4 times," which he reported was caused by severe vomiting and required hospitalization. Linwood scored in the overall high risk range on the Level of Service/Case Management Inventory.

At the sentencing hearing, Linwood expressed regret for his actions and willingness to "face" the consequences of those actions. Linwood's attorney asked the district court to consider imposing a term of probation, either in Colorado or Nebraska, or to consider "deferred reporting," so that Linwood could move to Lincoln, and to impose a term of supervised house arrest, in light of "the COVID crisis" and Linwood's decreased kidney function. The district court indicated that it had reviewed the PSR, including a letter from Linwood and medical information received from his attorney. The court noted that Linwood did not have a lengthy criminal history and had received the benefit of a substantial plea agreement. It noted, however, that Linwood and the other individual involved had made the decision to "engage in a business transaction," by purchasing quantities of marijuana in Colorado where it was legal and to sell it elsewhere, where it was not. The court was troubled by the planning and decision-making involved in that process, noting that it was "not some sort of impulsive situation." The court noted that Linwood was now recognizing the effects of those decisions on his family and friends, but it stated:

> The time for you to have recognized that was when you were doing the risk reward analysis initially in deciding whether to engage in this activity; not to go ahead and do it, and then be sorry later and hope that those things you should've been considering weigh heavy on me and make me make a better decision for you.

The court stated that probation was not an appropriate sentence because it "sends the message that you can do this as long as you're sorry and . . . are reflective about it when you get caught." The court stated that, taking into account the nature and circumstances of the crime, Linwood's history and character, and the need to protect the public and deter criminal behavior, a sentence of incarceration was necessary.

Based upon this record, we can find no abuse of discretion by the district court in the sentence imposed.

## VI. CONCLUSION

With respect to those claims which were adequately pled, the record refutes that Linwood received ineffective assistance from his trial counsel. We find no abuse of discretion in the sentence imposed. We affirm the conviction and sentence.

AFFIRMED.